doubt, if the executor had done his duty, he would have entirely obviated any reference at all by causing an explanation of his account to be made to the special guardian, whose duty it was to carefully examine it, and to object if he found it wrong. This is one of a large number of similar proceedings managed in substantially the same way that this has been managed. More than four months have elapsed since this account was filed, and the special guardian appointed, and two weeks would have been ample to enable the executor to finish his business and obtain final decree. The special guardian has employed much and valuable time. A referee was required, and he has been compelled to attend for the purpose of hearing and determining any question that might be raised by the objections of the special guardian, and all this has been caused by the neglect of the executor's attorney, for which the executor is, of course, responsible. It is impossible for me to personally hear and determine all questions arising upon the settlement of the accounts of executors and administrators. Hence, under the statute enacted for that purpose, referees are appointed, and for the particular proceeding they are vested with all the powers of this court, and should act accordingly. *Stephens' Estate,* 28 Wkly. Dig. 132. They should not permit the proceeding to be delayed except for strictly legal cause. If the objector does not at once proceed to sustain his objections, the reference should be closed, and a prompt report to the court made of the exact facts, whereupon the objections may be stricken out for the want of prosecution. If the objections are idle and frivolous, the expense of the proceeding occasioned by them will be charged upon the contestant personally. If, on the other hand, the executor or administrator, as in this proceeding, does not diligently prosecute his duty, and manifest a disposition to promptly and economically complete the trust committed to his charge, and act in accordance therewith, he will be, as in this proceeding he shall be, required to pay the costs of the proceeding. Delays in proceedings before referees appointed by me are improper on every ground, and shall not be tolerated. I shall regard such delays, if acquiesced in by the referee, as conclusive evidence of his unfitness for his office. The costs claimed by the attorney of the executor, except disbursements, are disallowed. The special guardian is allowed $100. The referee is allowed $30, that being the amount fixed by statute for the days spent by him. And the entire cost of this proceeding as above taxed, is charged against the executor personally, for the reasons already given.

---

## *In re* CAVIN'S ESTATE.

(*Surrogate's Court, New York County.* October 12, 1888.)

1. EXECUTORS AND ADMINISTRATORS—ANCILLARY ADMINISTRATION—WHEN GRANTED.
A motion to grant ancillary letters testamentary to one alleging that he is executor of a will of the decedent duly probated in another state will not be granted on affidavits; but a reference will be ordered to determine whether the testatrix resided in such other state at the time of her death, or the execution of the will, so as to entitle petitioner to ancillary letters, under Code Civil Proc. N. Y. § 2695.

2. SAME—REVOCATION OF LETTERS TESTAMENTARY—PROBATE IN ANOTHER STATE.
Where petitioner also asks that letters of administration previously issued to another be revoked, the reference must include the question as to whether decedent's next of kin were cited in the foreign probate proceedings. If decedent resided in New York at the time of her death, or the execution of the will, and her next of kin were not cited, the letters of administration will not be revoked until proceedings are instituted to probate the will in New York.

On motion to grant ancillary letters testamentary on the estate of Ellen Cavin.

*William P. Sloan,* for petitioner.    *Geo. W. Wilson,* for administrators.

RANSOM, S. This is an application by a son of deceased, who claims to be the executor of her will heretofore admitted to probate in New Jersey, for an

order revoking letters of administration in chief issued by this court to one Thomas Cavin, also a son of deceased, and to George E. Clines, both residents of this county. The petitioner has already made an application for ancillary letters testamentary. A great deal of immaterial matter is set forth in the affidavits of the respective parties. In the answering affidavits to the application it is alleged that at the time of her death the decedent was a resident of this state. The son, one of the administrators, further alleges that he has received no notice of the existence of a will, nor of any application for its admission to probate either in New Jersey or elsewhere.

In determining this motion it becomes necessary to determine the application for ancillary letters testamentary. Section 2695, Code Civil Proc., provides that "where a will of personal property made by a person who resided without the state at the time of the execution thereof, or at the time of his death, has been admitted to probate by a competent court, within the foreign country, or the state or the territory of the United States, where it was executed, or where the testator resided at the time of his death, the surrogate's court having jurisdiction of the estate, must, upon an application made as prescribed in this article, accompanied with an exemplified copy of the will, and of the judgment, decree, or order so admitting the same to probate, and also of the foreign letters, if any have been issued, record the will and the foreign letters, and issue thereupon ancillary letters testamentary, or ancillary letters of administration with the will annexed, as the case requires." It will be seen that, in order to grant ancillary letters testamentary, this court must be satisfied that the testatrix resided without the state at the time of her death or the execution of the will. This fact is in controversy, and cannot be determined on affidavits. The application for revocation of the letters of administration involves the same question of residence, and one other. If the alleged testatrix resided in this state at the time of her death, or the execution of the will, and the next of kin were not cited to attend the proceeding admitting the will to probate in New Jersey, the letters of administration should not be disturbed until a proceeding is instituted in the courts of this state to admit the will to probate here. A reference must be ordered to determine the residence of deceased at the time of her death, or the execution of the will, and whether this respondent and next of kin was cited on the proceeding admitting her will to probate in the foreign jurisdiction.

---

## In re JONES' ESTATE.

*(Surrogate's Court, New York County.   October 12, 1888.)*

TAXATION—EXEMPTIONS—BENEVOLENT SOCIETIES—COLLATERAL INHERITANCE TAX.
The Bank Clerks' Mutual Benefit Association, incorporated under the act of 1848, for the incorporation of benevolent societies, "to relieve the necessities of the aged and disabled, and benefit the families of deceased" bank clerks, which provides for the admission of members, the fees and assessments to be paid, and a forfeiture of membership for non-payment of assessments, is simply a mutual benefit association, and, not being exempted from taxation by its charter, takes a legacy subject to the collateral inheritance tax.

On motion to confirm report of appraisers of the estate of Joshua Jones, deceased.

*Graham McAdam*, for the comptroller. *De Witt, Lockman & De Witt*, for the executor. *Miller, Peckham & Dixon*, for Bank Clerks' Mutual Benefit Association.

RANSOM, S. In this matter it is claimed on behalf of the Bank Clerks' Mutual Benefit Association that the bequest of $10,000 to it under the will of decedent is exempt from the collateral legacy tax upon the ground that the association is a charitable organization, the object being "to relieve the necessities of the aged and disabled, and benefit the families of deceased officers